## Frick, Appellant, *v.* Philadelphia.

*Road law—Change of grade—Abolition of grade crossing—Depression of portion of street—Act of May 26, 1891, P. L. 117.*

The Act of May 26, 1891, P. L. 117, refers only to the assessment of damages for the opening or widening of a street, and does not refer to a change of grade of the street made subsequently to the opening.

Where a city in order to avoid a railroad grade-crossing depresses only that portion of the street actually opened and used by the public, an abutting owner is entitled to recover damages based only on the actual change in grade necessary for the improvement; and if the city thereafter changes the grade of the remainder of the street, such owner, or the party then having title, may recover additional damages, and the record of the first proceeding cannot be offered to bar such recovery.

*Road law—Change of grade—Evidence—Verdict.*

In a proceeding by a property owner against a city to recover damages for a change of grade of a street made to avoid a railroad grade-crossing, it is not error to permit witnesses to testify as to the number of trains which passed at grade over the street immediately before the time of the change of grade.

In such a case the court commits no error in refusing to allow testimony offered by the plaintiff as to the vacancies of his houses, and the specific dropping of the rent.

*Road law—Verdict—Insufficiency of verdict—New trial.*

The appellate court will not reverse the action of the lower court in refusing to grant a new trial in a change of grade case, merely because the verdict was lower than the lowest estimate of any witness, where there was some evidence as to the cost of readjusting the properties to the changed conditions surrounding them, and the discrepancy in the verdict was not glaring.

Argued December 10, 1914. Appeals, Nos. 218, 219, 220 and 221, October T., 1914, by plaintiff, from judgments of C. P. No. 4, Philadelphia Co., March T., 1907,

284  FRICK, Appellant, *v.* PHILADELPHIA.

No. 4961, on verdicts for plaintiff in case of Charles E.
Frick v. Philadelphia.    Before RICE, P. J., ORLADY,
HEAD, KEPHART and TREXLER, JJ.    Affirmed.

Appeals from awards of jury of view.

From the record it appeared that damages were
claimed in separate proceedings for injuries to proper-
ties 1746, 1750, 1752 and 1754 West Allegheny Avenue in
the City of Philadelphia, resulting from the depression
of Allegheny Avenue to avoid a railroad grade crossing.

At the trial when Hector Mansfield was on the stand
he was asked this question :

"Q. What is your business?

"A. Trainmaster, Reading Railway.

"Q. How long have you occupied that position?

"A. Eight years.

"Q. Did you occupy that position in the fall of 1910?

"A. Yes, sir.

"Q. Does that position enable you to inform the court
and jury how many trains passed over Allegheny avenue
at grade in the fall of 1910, daily?

"A. Yes, sir, it does.

"Q. Will you kindly state to the court and jury that in-
formation?

"Objected to.    Objection overruled.    Exception noted
for plaintiff."    (11)

The plaintiff being on the stand was asked by Mr. Scar-
borough :

"Q. You had testified yesterday that in November,
1910, you rented 1754 West Allegheny avenue for four-
teen dollars, I think November, 1910, and it was vacant
from August to October.

"A. It was vacant from August to the first of Novem-
ber.    It was vacant for the month of October, 1910, four-
teen dollars rent.

"Q. Does the rent remain fourteen dollars down to the
present time?

"Objected to.   Objection sustained.   Exception noted for the plaintiff."    (12)

"Mr. Scarborough: I offer to prove by this witness the record of this house for vacancies before the change of grade, and also the record for vacancies after the change of grade was completed.     · ·

"Mr. Mead: That is objected to.

"The Court: The objection is sustained and the reason for that is that vacancies depend on so many different elements.

"Exception noted for the plaintiff." · (13)

"By Mr. Scarborough:

"Q. You had testified yesterday that in November, 1910, you re-rented 1754 West Allegheny avenue for $14.00, I think November, 1910, and it was vacant from August to October.

"A. It was vacant from August to the first of November; it was vacant for the month of October, 1910; $14.00 rent.

"Q. Does the rent remain $14.00 down to the present time?

"A. No.

"The Court: We are not concerned with the further dropping off of the rent.   If the rent is to be regarded as a separate item of damage, that item must be regarded as having closed at the time of the completion of the improvements.

"Mr. Scarborough: My offer is not to prove the dropping of the rent further as a separate item of damage, but simply to prove that fact as a guidance to the experts and also to the jury.

"I offer to show the rent after the completion of the streets.

"Objected to.   Objection sustained.   Exception noted for the plaintiff."    (14)

Defendant presented this point:

"3. The evidence in this case shows that Allegheny avenue in front of this property was graded by the City

of Philadelphia in the year 1910 to the width of eighty feet.   No damages can therefore be recovered by the plaintiff due to the possible effect of a change of grade beyond the line of the eighty feet actually graded.

"Answer. I so charge you."   (8)

The court charged in part as follows:

"Allegheny avenue is laid out on the city plan, and, as I understand the testimony of the witnesses, legally opened of the width of 120 feet.   Now, although, that is the legal width of the street, the City of Philadelphia has never improved it as of that width.   The city's improvements, and the use made by the city, and the citizens of the street, have been confined to a strip in the middle of the avenue 80 feet wide, measuring 40 feet in width in both directions from the centre line of Allegheny avenue.   The railroad tracks of the Philadelphia and Reading Railway Company originally crossed Allegheny avenue at grade.   In the year 1907, however, it was determined by the City of Philadelphia to make provision to do away with this and other grade crossings. And to that end councils passed an ordinance which provided for the change of grade of Allegheny avenue, so far as the city had improved it by pavements, and had prepared it for the use of people who had occasion to pass along there.   The grade of Allegheny Avenue was to be changed, but only so far as related to this central strip 80 feet wide.   The 20 feet wide strip on either side of this central 80 feet was to be left just as it had been up to that time.   These two 20 feet wide strips had not been paved up to that time, and the abutting property owners under an ordinance adopted by councils in the year 1865 had been permitted to make use of so much of this unused portion of the street as lay in front of their property according to their own desires.   It was not intended by council, by the passage of this ordinance, to interfere at all with the use of so much of the 20 feet strip as lay in front of each one of the houses which abutted on Allegheny avenue.   It was only the central portion of

the street, that portion of the street which was in use for travel, and which the city had improved by pavements, that was to be changed in its grade, but the grade of that portion of the street was to be so changed as to carry the street beneath the bridge by which it was to be crossed by the trains of the Philadelphia and Reading Railway Company.

"I want to impress on you that you are concerned simply with what the city has done in Allegheny Avenue. You are not concerned with what the city may do in the future. That matter is too speculative for you to go into. What the city has done the city must answer for. What the city may do if councils see fit, and the mayor does not veto the action of the councils, is something with which we are not concerned here, and the city does not have to cross that bridge until it comes to it, nor do any of the property owners." (9)

Verdicts and judgments in the four cases were for plaintiff for the sums of $300, $400, $650, and $900. Plaintiff appealed.

*Errors assigned* among others were (8, 9) above instructions noting them; (11-14) rulings on evidence quoting the bill of exceptions.

*Henry W. Scarborough*, for appellant.—The plaintiff's damages are not to be determined by the actual physical change of grade made by the city, but are determined, after the change of grade is once begun, by the amount of change of grade authorized by the ordinance: Hicks v. Williamsport, 235 Pa. 509; Dettra v. Philadelphia, 245 Pa. 139; Deer v. Sheraden Borough, 220 Pa. 307; Sedgley Avenue, 217 Pa. 313; Tabor Street, 26 Pa. Superior Ct. 167; Lageman v. Pittsburgh, 47 Pa. Superior Ct. 493; Steelton Borough v. Booser, 162 Pa. 630; Thirteenth Street, 38 Pa. Superior Ct. 265; New Brighton Borough v. Piersol, 107 Pa. 280.

Since the ordinance authorized the change of grade

of Allegheny avenue it must follow that the said ordinance authorized the change of grade of the sidewalks as well as the cartway: McDevitt v. Peoples Nat. Gas Company, 160 Pa. 367; Allegheny County Light Co. v. Booth, 216 Pa. 564; McGar v. Bristol, 71 Ky. 652; Ogontz Avenue, 225 Pa. 126.

Even if it should be decided that the ordinance approved October 13, 1906, authorized the change of grade of Allegheny avenue to a width of only eighty feet, yet, the plaintiff would be entitled to claim damages for the grading from house line to house line: Braucher v. Borough, 58 Pa. Superior Ct. 130.

*Glenn C. Mead,* with him *Edwin O. Lewis,* Assistant City Solicitors, and *Michael J. Ryan,* City Solicitor, for appellee.

OPINION BY TREXLER, J., July 21, 1915:

Allegheny avenue was plotted on the plan of the City of Philadelphia in 1839 as a street of the width of 150 feet. It was opened thereafter only to the width of eighty feet and to that extent has been used by the public constantly. By an ordinance approved December 23, 1865, the width of the footways on said avenue between Broad and Twenty-fourth streets was fixed at thirty-five feet and the abutting property owners were authorized to fence in the twenty feet of the footways in front of their house line as an open space. It appears that the driveway was fifty feet in width and the sidewalk on each side fifteen feet and thus the entire portion used by the public as stated before was eighty feet in width. This was the condition of affairs when in 1906 the Philadelphia & Reading Railway Company entered into an arrangement with the City of Philadelphia for the abolition of certain grade crossings, the cost to be divided equally between the city and the railroad company. The ordinance covering the improvements was dated October 13, 1906, and provided, inter alia, "For the necessary

change of grade of certain streets," "for the carrying out and completing of work of every character necessary to abolish the said grade crossings," "the erection of bridges to carry said railroad over and above the streets now opened or opened under authority of this ordinance .......between the south side of Allegheny avenue and the north side of Hunting Park avenue," and makes reference to the payment of damages by reason of "the change of grade of any street as herein authorized or by reason of the execution of any of the work herein provided for." These are the only provisions of the ordinance which relate to the present inquiry. The city in the carrying out of the purposes of the ordinance depressed Allegheny avenue, so that an overhead railroad crossing could be made. In doing this it graded Allegheny avenue down to its present level to the width of eighty feet, that being the width of the street as actually opened. The viewers in their ascertainment of damages for the change of the grade of said avenue were confined to the width of eighty feet, that being the extent of the actual physical change. The plaintiff however contends that the damages should have been given for the entire width of the street although not graded to the house line; that if the city hereafter grades the remainder of the street he will be without remedy; that there can be no separation of the damages but that they must be recovered as an entirety in one proceeding and that if he fails to get his damages for the grading of the entire street to its full width now, he can recover nothing hereafter, should the city conclude at any time to grade the remainder of the street. He cites the Act of May 26, 1891, P. L. 117; Dettra v. City of Philadelphia, 245 Pa. 139; Hicks v. Williamsport, 235 Pa. 509; Deer v. Sheraden Boro., 220 Pa. 307. The Act of 1891 provides, "that in all cases of assessment of damages for the opening or widening of any street or highway, the award of damages, if any, shall include all damages due to the grade at which the said street or highway is opened or widened

and the plan attached to the report of the viewers awarding the damages shall have thereon a profile showing the existing grade."

The appellant contends that the cases above referred to show conclusively that under said act but one proceeding is contemplated in which all damages suffered by abutting owners affected thereby must be ascertained. A careful reading of the act shows that it refers only to the assessment of damages for the opening or widening of any street, it does not refer to the change of grade of any street. The plain intent of the act is that the original opening of the street shall include the grading of the street as designated in the ordinance and the damages for the original opening and grading must be recovered in one proceeding. We are met with a different proposition in the case before us. Allegheny avenue was opened long before the Act of 1891 was passed. The present proceedings at law are only rendered necessary by reason of a change of grade. The change of grade of Allegheny avenue was such as was required to effect the contemplated improvements. The main purpose of the ordinance was not to change the grade of the streets. It was to abolish grade crossings, and the lowering of the grade of Allegheny avenue was only incidental to the general purpose of the ordinance. The change of grade which was necessary was the lowering of the portion of the street which was actually in public use. The improvement being finished all that was necessary to be done to effect it has been done. There was no direction in the ordinance that Allegheny avenue was to be graded to the entire width. All we find to guide us is the word "necessary." We therefore presume that the plaintiff is entitled to recover for the actual grading that has been done and that if the city hereafter should grade the remainder of the street, he, or the party then having the title, might recover damages and the record of the present proceeding could not be offered in bar of such action. Certainly, the city must not in every

instance, when it wishes to change the grade of a street, grade it from house line to house line.   It may in its ordinance divide the street longitudinally.   In the case of Braucher v. Somerset Boro., 58 Pa. Superior Ct. 130, the plaintiff contended that he was entitled to an award of damages to the entire amount of the injury which his property would have sustained if the street had been graded to its full width from property line to property line and the grading of that width carried down to the level of the grading done by the borough in the cartway.   The borough authorities admitted that the plaintiff was entitled to some damages but asserted that the borough had not undertaken to grade the entire street including the sidewalks; that the work which the borough had undertaken was completed and that the sidewalks still remained in place and asserted that the plaintiff was entitled to recover damages for the work which the borough had undertaken to do and which it had completed.   This court reversing the court below decided that the plaintiff was entitled to recover for the injury which his property had actually sustained because of what the borough had done, but not upon any speculative theory as to what the borough may do in the future: Jones v. Bangor Boro., 144 Pa. 638; Markle v. Philadelphia, 163 Pa. 344; Howley v. Pittsburgh, 204 Pa. 428.   Brother PORTER who wrote the opinion in that case states, "The damages and benefits resulting from a public improvement are, it is true, required to be ascertained from the results of the improvement as an entirety.   This, however, does not mean that a municipality, when it undertakes to grade a part of a street, be it either of the width or length of the same, must respond in damages upon the same basis as if it had undertaken to grade and actually graded the street throughout the entire length and width.   The action of the borough in grading the cartway of the street, leaving the sidewalks at the former level, was clearly within its delegated powers.   The plaintiff is entitled to recover

damages for the injury to his property resulting from this lawful exercise of municipal power, but he is not entitled to recover upon the theory that the borough authorities may at some future time reduce the grade of the sidewalk."

That decision clearly rules the point in this case. If we are right in holding that the intent of the ordinance above referred to was carried out by the grading of Allegheny avenue to its width as physically opened, then the plaintiff's damages are necessarily confined to the injury actually sustained and if the city thereafter should, by proper legislation, decide to grade the remainder of the street, the damages accruing must be then paid. This disposes of the first nine assignments of error.

The tenth assignment is as to the refusal of the lower court to grant a new trial. The only question we need consider under this assignment is the alleged inadequacy of the verdict. The plaintiff contends that the verdict being lower than the lowest estimate of any witness, it was an abuse of discretion on the part of the lower court not to grant a new trial. We do not think so. Beside the estimate of witnesses as to the depreciation of the market value by reason of the change of grade there was some evidence as to the cost of readjusting the properties to the changed conditions surrounding them and these estimates were to be considered along with the remainder of the testimony. In estimating the damages, the jury was entitled to take into consideration, all the evidence in the case. The discrepancy in the verdict was not so glaring as to require a new trial. There was no abuse of discretion in the lower court's refusal of it.

The eleventh assignment is directed as to the admission of testimony as to the number of trains passing at grade over Allegheny avenue in 1910. This was descriptive of conditions that existed immediately before the time of the change of grade and was a circumstance in the case. It had little probative value, but its admission did not constitute reversible error

The twelfth, thirteenth and fourteenth assignments of error are directed to the refusal of the court to allow testimony as to the vacancies of the houses of the plain-tiff and the specific dropping of the rent. The court rejected the testimony because the vacancy and the loss of rent might be due to many causes. Had the offer been made to prove the rental value of the premises and the diminution of this value by the change of grade it would have been relevant. No harm was done to plaintiff by the exclusion of this testimony as it was merely cumulative, he having testified to the same facts as he wished to establish by the witness.

The fifteenth and last assignment is to the allowance of damages for the delay in the payment of the claim. We think the instructions of the court taken in connection with the answer to plaintiff's eleventh point were correct.

All the assignments of error are overruled. Judgment affirmed.